UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

    Plaintiff,

v.                                                       Case No: 8:13-cv-2290-T-36MAP

GARY PAWLOSKI,

    Defendant.
_____/

# **ORDER**

This cause comes before the Court upon Plaintiff Unum Life Insurance Company of America's ("Unum") Motion for Summary Judgment (Doc. 32). Defendant Gary Pawloski failed to respond to the motion within the time prescribed by the Local Rules. Accordingly, on July 21, 2014, the Court ordered Pawloski to respond to the motion by July 28, 2014, and cautioned that failure to do so would result in the Court considering the motion as unopposed. Doc. 40. Pawloski failed to respond to the motion or the Court's order, so on August 6, 2014, the Court, recognizing Pawloski's *pro se* status, advised him again that his failure to respond to the motion would indicate that the motion was not opposed. Doc. 42. The Court also warned Pawloski that it would consider all material facts asserted in the motion to be admitted by him unless he controverted them with proper evidentiary materials. *Id.* Despite these admonitions, Pawloski has not responded in any way to the motion or to the Court's orders. Accordingly, the Court will treat the motion as unopposed and the material facts asserted therein as admitted by Pawloski. The Court, having considered the motion and being fully advised in the premises, will now GRANT Unum's Motion for Summary Judgment.

I.  **STATEMENT OF FACTS**[1]

This action arises from the alleged overpayment of benefits by Unum to Pawloski pursuant to a group long term disability policy issued by Unum to Pawloski's former employer, Compass Group USA, Inc. Declaration of Christine Mills ("Mills Decl.") Ex. 1 ("Policy"). The Policy provides, in relevant part, that "any deductible sources of income" are to be subtracted from gross disability payments. Policy at OP-000102-103. The Policy further defines "deductible sources of income" to include "[t]he amount that [an insured] receive[s] or [is] entitled to receive under a workers' compensation law . . . ." Policy at OP-000104. Finally, the Policy provides that, if Unum determines that the insured may qualify for benefits that fall under certain categories of deductible sources of income, Unum may deduct estimated amounts of those benefits from the gross disability payments unless the insured applies for those benefits and signs Unum's payment option form agreeing to reimburse Unum for any overpayment caused by an award of such benefits. Policy at OP-000106-07.

Pawloski began receiving long-term disability benefits payments from Unum effective April 30, 2007. Mills Decl. ¶ 7. Initially, he elected to have Unum estimate the amount of deductible benefits he would receive from other sources and reduce his disability payments by that amount. Mills Decl. Ex. 2. In February 2008, however, Pawloski changed his election and requested that Unum issue his payments without reduction in exchange for his agreement to "notify the Insurer within 48 hours of receiving notice of any and all decisions [regarding deductible benefits] . . . and to repay any overpayment incurred as a result of receiving any other benefits

---

[1] The Court derives the following Statement of Facts from the declaration and exhibits submitted in support of Unum's Motion for Summary Judgment. Because Pawloski has not responded despite the Court's multiple notices, the facts contained therein are considered undisputed and admitted by him. *See* Fed. R. Civ. P. 56(e).

from those sources specified in the policy." Mills Decl. Ex. 4. Pawloski further agreed to reimburse any overpayment within thirty days of his receipt of such funds, and agreed that if he did not do so, he would be liable for the full amount of any such overpayment "plus the applicable statutory interest" and "all reasonable costs (including attorney's fees) for collection of the overpaid benefits." Mills Decl. Ex. 4. Unum subsequently paid Pawloski unreduced benefits until he reached the maximum benefit period on October 29, 2010. Mills Decl. ¶ 14.

During the period when Pawloski was receiving unreduced benefits from Unum, Unum repeatedly sought information from Pawloski and the Division of Worker's Compensation regarding his workers' compensation settlement. Mills Decl. ¶ 17. Pawloski indicated that, as of October 2009, he had not yet reached a workers' compensation settlement. Mills Decl. ¶ 17, Ex. 10. On September 13, 2010, Pawloski's attorney notified Unum that a tentative settlement had finally been reached in Pawloski's Worker's Compensation claim, and asked Unum if it would be pursuing a lien in that matter. Mills Decl. ¶ 18, Ex. 12. In response, Unum stated that, although it would not place a lien or pursue subrogation against the settlement, it had a right of recovery for any overpayment of benefits due to other income sources. Mills Decl. ¶ 19, Ex. 13. Pawloski's attorney then requested clarification as to whether "other income sources" included workers' compensation benefits. Mills Decl. ¶ 20, Ex. 14. In response, Unum left Pawloski's attorney a voice message clarifying that "other income sources" *did* include workers' compensation benefits. Mills Decl. ¶ 21, Ex. 15.

Over the next 18 months, Unum regularly contacted Pawloski's Worker's Compensation adjusters and attempted to reach Pawloski's attorney in an effort to obtain the details of Pawloski's workers' compensation settlement. Mills Decl. ¶¶ 22-31. These efforts largely proved to be fruitless, and, despite its best efforts, Unum was never able to obtain documentation regarding

3

Pawloski's workers' compensation settlement, either from the adjusters, Pawloski's attorney, or Pawloski himself. Mills Decl. ¶¶ 32-36. Through a telephone conversation with a Worker's Compensation adjuster in December 2011, however, Unum learned that Pawloski had been awarded a settlement on October 26, 2011 in the amount of $150,000, with $70,000 set aside for Medicare, which was backdated and covered the same time period for which Pawloski was receiving unreduced benefits from Unum. Mills Decl. ¶¶ 30, 32, Exs. 24, 26.

Because it was unable to obtain the details of the settlement, Unum was forced to estimate the amount of overpayment based on the information it had learned from the Worker's Compensation adjuster, and in April 2012, wrote a letter to Pawloski seeking the return of the overpayment. Mills Decl. ¶¶ 41-42, Exs. 31, 32. After Pawloski failed to respond to that letter, Unum sent him multiple letters and attempted to call him multiple times seeking repayment of the overpayment. Mills Decl. ¶¶ 44-49, Exs. 34-38. Pawloski once more failed to respond to those calls or letters, so Unum filed its Complaint in September 2013 seeking reimbursement of the overpayment, along with attorney's fees. Doc. 1. Unum now seeks judgment as a matter of law that it is entitled to recover the overpayment in the amount of $49,187.58.[2] Doc. 32.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson*

---

[2] Unum is no longer seeking attorneys' fees. Doc. 46.

*Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact.  *Id.* at 324.  Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party.  *Celotex*, 477 U.S. at 323.

Even if the nonmoving party fails to respond, however, a court may not grant summary judgment based on the mere fact that the motion was unopposed.  *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004).  Rather, the court must consider the merits of the motion, and grant it only "if appropriate." *Id.* at 1101; *see also* Fed. R. Civ. P. 56(e).  Accordingly, although the court "need not *sua sponte* review all of the evidentiary materials on file," it "must ensure that the motion itself is supported by evidentiary materials.  At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment. . . . [and] indicate that the merits of the motion were addressed."  *Id.* (quotation marks and citations omitted).

### III.  DISCUSSION

29 U.S.C. § 1132(a)(3) provides, in relevant part, that "[a] civil action may be brought" by a plan fiduciary "to obtain [] appropriate equitable relief . . . to enforce . . . the terms of the plan."  Importantly, this provision requires that the nature of the recovery and the basis of the claim be

equitable.  *See Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 362-63 (2006).  A claim satisfies this requirement if it seeks to impose "a constructive trust or equitable lien on particular funds or property in the defendant's possession," and the agreement identifies "a particular fund, distinct from the [defendant's] general assets . . . and a particular share of that fund to which [plaintiff is] entitled."  *Id.* at 362, 364 (quotation marks and citations omitted).  As the Supreme Court explained, such a claim is the "modern-day equivalent" of an action in equity to enforce a "contract-based lien," or an "equitable lien by agreement."  *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1545 (2013) (quotation marks and citation omitted).  In *Sereboff*, the Supreme Court thus held that a health-plan administrator may enforce a reimbursement provision by bringing suit under 29 U.S.C. § 1132(a)(3).  *See generally Sereboff*, 547 U.S. at 356-57.

The analysis here is straightforward.  Unum is a fiduciary under ERISA that has brought a suit to enforce the terms of the Policy.  The Policy identifies a particular fund distinct from Pawloski's general assets to which Unum is entitled—namely, any "deductible sources of income."  Policy at OP-000102-03.  Pawloski's workers' compensation settlement, the source of the fund to which Unum claims that it is entitled, is specifically listed in the Policy as a "deductible source of income."  Policy at OP-000104.  And the particular share of that fund to which Unum claims that it is entitled is the amount it overpaid Pawloski pursuant to the reimbursement agreement, which Pawloski agreed to reimburse when he elected to receive unreduced benefits.  An equitable lien by agreement in the amount Unum overpaid Pawloski pursuant to the reimbursement agreement thus attached to Pawloski's workers' compensation settlement as soon as the fund arose. Therefore, Unum is entitled to recover that amount.  *Accord Bd. of Trustees of the Nat'l Elevator Indus. Health Benefit Plan v. Montanile*, Case No. 18-cv-80746, 2014 U.S. Dist.

LEXIS 36309, at *29 (S.D. Fla. Mar. 17, 2014); *see also Popowski v. Parrott*, 461 F.3d 1367, 1373 (11th Cir. 2006).

Pawloski has suggested that he has already used or otherwise dissipated the specific funds he received from his workers' compensation settlement. Doc. 8. But even if he has already used those specific funds, this would not defeat Unum's claim. *Sereboff* did not impose a strict tracing requirement, *see Sereboff*, 547 U.S. at 364-65, and to do so under these circumstances would "set a dangerous precedent" by permitting a plan participant to "decline to deduct any amount for other future benefits and then [to] spend all money received, knowing that he would not be held responsible for any overpayment if the funds were dissipated." *Lamb v. Hartford Life and Accident Ins. Co.*, 862 F. Supp. 2d 1342, 1354 (M.D. Ga. 2012). Although the Eleventh Circuit has yet to explicitly decide this issue, it has suggested that, were it to do so, it would follow "the overwhelming majority of circuit courts [that] have held, after interpreting *Sereboff*, that a beneficiary's dissipation of assets is immaterial when a fiduciary asserts an equitable lien by agreement," *Montanile*, 2014 U.S. Dist. LEXIS 36309, at *30-31 (citing cases). *See Popowski*, 461 F.3d at 1373 n.8 ("the fact that the third-party recovery triggering the [] Plan's reimbursement provision was comingled, even absent tracing, would not have disqualified an equitable lien had that equitable lien been *by agreement*") (emphasis in original).[3]

In sum, after reviewing Unum's Motion for Summary Judgment and the accompanying memorandum of law, the Declaration of Christine Mills and the accompanying exhibits, the Court is satisfied that Unum has set forth a claim that is permissible under the law. Further, after

---

[3] The Court also finds of no consequence Unum's letter to Pawloski's attorney stating that it would not place a lien on the settlement. Pawloski has not asserted any equitable defenses for which this fact might be relevant, and the Court will not *sua sponte* raise any such defense for Pawloski.

reviewing the undisputed facts, it is clear that Unum is entitled to judgment as a matter of law with regard to its claim for recovery of the overpayment.[4] By failing to respond to Unum's motion, Pawloski has admitted that he was unjustly enriched by the overpayment in the amount of $49,187.58, as calculated by Unum. Mills Decl. Ex. 39. As no genuine issues of material fact exist, the Court will grant Unum's Motion for Summary Judgment. Accordingly, it is hereby

**ORDERED AND ADJUDGED**:

1. Unum's Motion for Summary Judgment (Doc. 32) is **GRANTED** as to its claim for recovery of the overpayment.

2. Unum's vague request for prejudgment statutory interest, embedded in one sentence in its Motion for Summary Judgment, is **DENIED**.

3. Plaintiff Unum is awarded $49,187.58. The Clerk is directed to enter a judgment in favor of Plaintiff UNUM Life Insurance Company of America and against Defendant Gary Pawloski in the amount of $49,187.58.

4. The Clerk is further directed to close this case.

**DONE AND ORDERED** in Tampa, Florida on November 26, 2014.

Charlene Edwards Honeywell
United States District Judge

---

[4] The Court, however, will deny Unum's request for "the applicable statutory interest," which is embedded in the last sentence of its memorandum in support of its Motion for Summary Judgment. "The award of an amount of prejudgment interest in an ERISA case is a matter 'committed to the sound discretion of the trial court.'" *Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Ala.*, 41 F.3d 1476, 1484 (11th Cir. 1995) (citation omitted). Here, Unum has failed to state the authority pursuant to which it is seeking statutory interest, the rate of the applicable statutory interest that it is seeking, and the time period over which it is seeking the statutory interest, and has failed to cite any legal authority supporting that it is entitled to such. Accordingly, the Court in its discretion will deny the request.

Copies to:
Counsel of Record
Unrepresented Parties